## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**INDIA SMITH**                                                                              **PLAINTIFF**

**v.**                                            **Case No. 3:22-cv-00198-KGB**

**TABLETOPS UNLIMITED INC.**                                               **DEFENDANT**

### ORDER

Before the Court is defendant Tabletops Unlimited, Inc. d/b/a TTU's ("TTU") motion to strike Dr. David Rondinone, Ph.D., P.E.'s and Mr. Derek King, P.E.'s report and to exclude as experts (Dkt. No. 22). Plaintiff India Smith responded in opposition to the motion (Dkt. No. 28). TTU replied (Dkt. No. 32). For the following reasons, the Court denies, in part, and takes under advisement, in part, the motion to strike and exclude Ms. Smith's proposed expert opinions and testimony (Dkt. No. 22).

Also before the Court is TTU's motion to strike Ms. Smith's Exhibits G, H, I, and M to her response to TTU's motion to strike and exclude experts (Dkt. No. 33). Ms. Smith responded in opposition to the motion (Dkt. No. 37). For the reasons explained in this Order, the Court denies TTU's motion to strike Ms. Smith's Exhibits G, H, I, and M to her response to TTU's motion to strike and exclude experts (Dkt. No. 33).

### I.    Summary Of Arguments

TTU, in its motion, asserts that exclusion of Dr. Rondinone and Mr. King as experts is warranted due to the unreliability of the principles and methods of their testing that is the basis of their opinions (Dkt. No. 22, at 1). TTU also asserts that Dr. Rondinone and Mr. King's reports should be stricken and excluded because their reports fail to meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) (*Id.*). In addition, TTU maintains that Dr. Rondinone and Mr. King

should not be permitted to supplement their expert report or to correct their report after receiving TTU's expert disclosures prior to the deadline for rebuttal disclosures (*Id.*, at 2).

Ms. Smith opposes the motion, asserting that her experts should not be precluded from testifying because TTU's expert "does not approve of their work" or because they did not serve a rebuttal report after reviewing the report of TTU's expert (Dkt. No. 28, at 1). TTU filed a reply in further support of its motion to strike and exclude Ms. Smith's experts, contending the motion is well supported and made in good faith (Dkt. No. 32).

## II.     Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *See* Fed. R. Evid. 702; *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The language of this Rule changed in December 2023, but the substantive law did not. The change was intended to clarify that preponderance of the evidence standard applies to expert opinions under this rule. *See* Fed. R. Evid. 702 (advisory committee's note to 2023 amendment) ("But many courts have held that the critical questions of the sufficiency of an expert's basis, and

the application of the expert's methodology, are questions of weight and not admissibility.  These rulings are an incorrect application of Rules 702 and 104(a).").

A district court must ensure that testimony admitted under Rule 702 "is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).  "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703.  "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  *Id.*  When making the reliability determination, a court may evaluate whether the expert's method has been tested or subjected to peer review and publication, the method's known or potential rate of error, and the method's general acceptance.  *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (citing *Daubert*, 509 U.S. at 593-94).

These factors are not exhaustive, and a court must evaluate the reliability of expert testimony based on the facts of the case.  *Id.*  A court also may consider "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case."  *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2008) (internal quotation marks omitted).  When weighing these factors, a district court must function as a gatekeeper to separate "expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge."  *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001).  The purpose of these requirements "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the

practice of an expert in the relevant field." *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.*

The proponent of expert testimony must prove its admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony" and favors admission over exclusion. *Id.* (internal quotation marks omitted). The determination as to the admissibility of expert testimony is within a district court's sound discretion. *See Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997). When examining an expert opinion, a court applies a general rule that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995)).

Expert testimony is not admissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case," *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006), such that the testimony is "so fundamentally unsupported that it can offer no assistance to the jury," *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006) (internal quotation marks omitted). While some guesswork is necessary for expert testimony, "too much is fatal to admission." *Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1063 (D. Minn. 2012) (quoting *Grp. Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 760 (8th Cir. 2003)). However, disputes about the factual basis of an expert's testimony ordinarily implicate the credibility—not the admissibility—of the testimony. *Sappington*, 512 F.3d at 450; *see also Minn. Supply Co.*, 472 F.3d at 544. As long as the expert testimony "rests upon good grounds, based on what is known,

it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (citations and quotations omitted). The exclusion of expert testimony is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury[.]" *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (citations and quotations omitted).

It is wise to keep in mind that *Daubert* and its progeny "call for the liberal admission of expert testimony." *In re Bair Hugger Forced Air Warming Devices Prods. Liability Litig.*, 9 F.4th 768, 777 (8th Cir. 2021) (citation omitted). Thus, "the rejection of expert testimony is 'the exception rather than the rule.'" *United States v. Perry*, 61 F.4th 603, 606 (8th Cir. 2023) (quoting *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006)). Finally, the Supreme Court has said, and the Eighth Circuit has reiterated, "'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means' of addressing 'shaky but admissible evidence.'" *In re Bair Hugger*, 9 F.4th at 778 (quoting *Daubert*, 509 U.S. at 596). With these standards in mind, the Court turns to consideration of the motions challenging experts.

### III.   Analysis

Ms. Smith asserts, and this Court agrees, that TTU "has not challenged either Dr. Rondinone's or Mr. King's qualifications and has no credible basis to do so." (Dkt. No. 28, at 5). They are both qualified engineers with experience in the analysis of pressure cookers.

Having examined the record in this case, the parties' arguments, and the controlling authorities, this Court concludes that Dr. Rondinone and Mr. King's opinions and anticipated testimony regarding the interlock feature are admissible. The Court sees no basis to exclude these

opinions and testimony as unreliable.  The Court concludes that these opinions and testimony will more likely than not aid the jury.  The record demonstrates that Ms. Smith's experts reviewed the subject pressure cooker and an exemplar cooker and performed testing based on their review.  To the extent TTU claims that Ms. Smith failed to disclose sufficient detail regarding the testing to make these opinions and the anticipated testimony admissible (Dkt. No 32, at 7-8), the Court rejects that argument.  TTU may explore those issues in vigorous cross-examination and presentation of contrary evidence and by proposing instructions on the burden of proof.  As to this point, the Court denies TTU's motion.

Further, the Court concludes that Ms. Smith's expert opinions and testimony on clogging are reliable and relevant based on the experts' prior experience with pressure cookers and clogging events and the facts of this case, including but not limited to Ms. Smith's deposition testimony and TTU's statements and warnings.  TTU argues only that this issue "has no relationship to causation in this matter and is merely fault finding" (Dkt. No. 32, at 7).  The Court rejects TTU's arguments that these opinions and this proposed testimony are irrelevant or inadmissible, given the facts of this case and TTU's anticipated arguments regarding what it contends was Ms. Smith's alleged "misuse of the product" (*Id.*).  As to this point, the Court denies TTU's motion.  The Court also acknowledges that the parties dispute any purported misuse by Ms. Smith (*see* Dkt. No. 28-1, ¶¶ 4-7 (discussing Ms. Smith's testimony and TTU's characterization of it); Dkt. No. 28-2, ¶¶ 4-7 (same)).

Ms. Smith's experts' opinions that TTU did not conduct a proper Failure Modes and Effects Analysis or other risk assessment appears, at least on the record before the Court at this stage, to be reliable.  However, TTU contends that it "was merely the distributor of the product," suggesting that TTU cannot provide evidence of a risk assessment as it was not the manufacturer (Dkt. No.

32, at 6).  TTU also maintains there is no evidence that TTU, as the distributor, had a role in the design of the pressure cooker (*Id.*, at 6-7).  The Court acknowledges that Ms. Smith takes issue with and challenges through record evidence these representations by TTU (*see* Dkt. No. 37, at 7 (citing deposition testimony of Fred Rabizadeh to assert that TTU is involved in the testing process and plays an active role in quality control for the Philippe Richard pressure cooker line, including inspection and verification of testing processes)).  For these reasons, because the parties dispute the facts and circumstances surrounding this issue, the Court takes this portion of TTU's *Daubert* motion under advisement and will hear additional argument from counsel on this point at the pretrial hearing to be conducted in this matter prior to the trial's start.

In addition, the Court determines that Ms. Smith has met her disclosure and supplementation burdens under the Federal Rules of Civil Procedure with respect to her experts. TTU contends that, if Ms. Smith's experts relied on any information contained in Exhibits G, H, I, and M to her response to the Daubert motion, those exhibits were not identified in the expert reports (Dkt. No. 32, at 8).  Further, TTU claims that Ms. Smith failed to disclose her experts' prior testing of other pressure cookers as a basis for their opinions in their reports (*Id.*).  For these reasons, TTU seeks to strike Dr. Rondinone and Mr. King's reports and to exclude them as experts (*Id.*).

The Court observes that Dr. Rondinone's report states in pertinent part under "Qualifications" that "[h]e has worked for more than 30 years in the areas of failure analysis, design, and risk assessment of consumer and industrial equipment, including pressure cookers." (Dkt. No. 28-5, at 6).  As to Mr. King, the report under "Qualifications" states that "[f]rom 2009 to the present, he has worked as an engineer. . . in the areas of failure analysis, design, and risk assessment of consumer and industrial equipment, including pressure cookers." (*Id.*, at 7).  Experts

are entitled to rely upon their knowledge, skill, experience, and training, and Ms. Smith's experts sufficiently disclosed their prior experience with pressure cookers as a basis for their opinions.

As to Exhibits G, H, I, and M to Ms. Smith's opposition to the *Daubert* motion, TTU filed a separate motion to strike these exhibits from Ms. Smith's response in opposition to TTU's initial motion to strike (Dkt. No. 33).  Ms. Smith responded in opposition to this motion (Dkt. No. 37). In her response, Ms. Smith takes the position that neither Dr. Rondinone nor Mr. King relied upon Exhibits G, H, I, or M or used these exhibits in developing the opinions and anticipated testimony they intend to offer (*Id.*, at 5).  Instead, Ms. Smith asserts that these documents were cited in her opposition to the *Daubert* motion to rebut some of the claims and arguments raised by TTU in its motion to strike and exclude (*Id.*, at 3-4).  Ms. Smith maintains that Exhibit G is a user manual for one of TTU's own pressure cookers and that Exhibit M is the deposition transcript of TTU's own corporate designee from a prior case (*Id.*, at 3).  Ms. Smith also maintains that Exhibits H and I are user manuals for other types of pressure cookers and that these documents are publicly available documents that Ms. Smith located online for use in defending against TTU's *Daubert* motion (*Id.*, at 3).

Having considered the parties' arguments, the record before the Court, and controlling authorities, the Court denies TTU's motion to strike Exhibits G, H, I, and M (Dkt. No. 33).  The Court will not strike these exhibits for failure to disclose, pursuant to Federal Rule of Evidence 401, 402, or 403, or on any other basis cited by TTU in its motion to strike.  Further, the Court denies TTU's motion to strike or exclude Ms. Smith's proposed expert opinions and testimony on this basis (Dkt. No. 22).

A supplemental expert report is not required by this Court or the Federal Rules of Civil Procedure.  The Court denies TTU's motion to strike and exclude Ms. Smith's experts to the extent

TTU seeks dismissal or any other discovery sanction pursuant to Federal Rule of Civil Procedure 37.

### IV.      Conclusion

For these reasons, the Court denies, in part, and takes under advisement, in part, the motion to strike and exclude Ms. Smith's proposed expert opinions and testimony (Dkt. No. 22). For these reasons, the Court also denies TTU's motion to strike Ms. Smith's Exhibits G, H, I, and M to her response to TTU's motion to strike and exclude experts (Dkt. No. 33).

To the extent Ms. Smith or TTU seek fees or costs in the filing and responding to these two motions, the Court denies the requests.

It is so ordered this 15th day of April, 2024.

Kristine G. Baker
Chief United States District Judge