IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**INDIA SMITH**                                                                                              **PLAINTIFF**

v.                                    Case No. 3:22-cv-00198-KGB

**TABLETOPS UNLIMITED INC.**                                                               **DEFENDANT**

### OPINION AND ORDER

Before the Court is defendant Tabletops Unlimited, Inc.'s ("TTU") motion for summary judgment (Dkt. No. 24). Plaintiff India Smith responded in opposition, and TTU filed a reply (Dkt. Nos. 29; 31).

Along with filing a motion for summary judgment, TTU moved to strike and exclude the testimony of Ms. Smith's expert witnesses Dr. Rondinone and Mr. King (Dkt. No. 22). Ms. Smith responded in opposition to this motion to strike, and TTU filed a reply (Dkt. Nos. 28; 32). TTU also moved to strike certain exhibits to Ms. Smith's response in opposition to TTU's motion to strike and exclude Ms. Smith's expert witnesses (Dkt. No. 33). Ms. Smith responded in opposition to this motion (Dkt. No 37). By separate Order, the Court denies, in part, and takes under advisement, in part, TTU's motion to strike and exclude Ms. Smith's expert witnesses (Dkt. No. 22). By separate Order, the Court also denies TTU's motion to strike certain exhibits to Ms. Smith's response to TTU's motion to strike and exclude Ms. Smith's expert witnesses (Dkt. No. 33).[1]

---

[1] To the extent TTU seeks to strike these exhibits in regard to Ms. Smith's response to TTU's motion for summary judgment, TTU cites in its motion only Federal Rule of Civil Procedure 26 and Federal Rules of Evidence 401 and 403 (Dkt. No. 33, at 1). At this stage of the litigation based on the record before the Court, the Court determines these exhibits are relevant pursuant to Federal Rules of Evidence 401 and 402 and not excludable pursuant to Federal Rule of Evidence 403. The Court denies TTU's motion on these bases, given Ms. Smith's arguments regarding the nature of the exhibits as rebuttal exhibits that were either in the possession, custody,

For the following reasons, the Court denies TTU's motion for summary judgment (Dkt. No. 24).

### I.     Background

Unless otherwise specified, the Court draws the following facts from TTU's statement of undisputed material facts and Ms. Smith's response to TTU's statement of undisputed facts (Dkt. Nos. 25; 29-1).

TTU previously served as a U.S. distributer of Philippe Richard pressure cookers manufactured by Yuyao Municipal Three Stars Kitchen Appliance Co. Ltd., including the Philippe Richard YPC-1301 6-quart pressure cooker (Dkt. Nos. 25, ¶ 1; 29-1, ¶ 1). Yuyao Municipal Three Stars Kitchen Appliance Co. Ltd. is a company based in Ningbo, Zhejiang, China (*Id.*, ¶ 2). TTU stopped distributing pressure cookers from any manufacturer in 2017 (*Id.*, ¶ 3).

TTU states that at no point prior to ceasing its distribution of pressure cookers in 2017 was TTU involved in the manufacture, production, or testing of the pressure cookers it distributed – these tasks were the sole province of the manufacturer (Dkt. No. 25, ¶ 4). Ms. Smith denies this and states with citation to record evidence that it is her understanding from the testimony given by Fred Rabizadeh in a related matter, *Criselda Chavez v. Tabletops Unlimited, Inc.*, 4:23-cv-00243-BP, as it pertains to the Philippe Richard pressure cooker line, TTU plays an active role in quality control for the pressuring, including, upon information and belief, inspection and verification of testing processes (Dkt. No. 29-1, ¶ 4).

---

or control of TTU or publicly available (Dkt. No. 37, at 3-4). Further, to the extent TTU seeks to exclude these exhibits from the summary judgment record, the Court denies that request based on the standard set forth in Federal Rule of Civil Procedure Rule 56(c)(2) and Ms. Smith's arguments regarding the nature of the exhibits as rebuttal exhibits (*Id.*).

Yuyao Municipal Three Stars Kitchen Appliance Co. Ltd. submitted the YPC-1301 6-quart pressure cooker to Underwriters Laboratories ("UL") for examination and testing against UL's standards for pressure cookers in 2013 (Dkt. Nos. 25, ¶ 5; 29-1, ¶ 5). UL certified the YPC-1301 6-quart pressure cooker for use of the UL mark in June 2013 (*Id.*, ¶ 6). Ms. Smith's Philippe Richard YPC-1301 6-quart pressure cooker was manufactured by Yuyao Municipal Three Stars Kitchen Appliances Co. Ltd. in July 2013, within one month of UL certifying the product line for use of its mark (*Id.*, ¶ 7). At some point prior to August 24, 2020, Ms. Smith acquired a Philippe Richard YPC-1301 6-quart pressure cooker that Yuyao Municipal Three Stars Kitchen Appliance Co. Ltd. "manufactured." (*Id.*, ¶ 8).[2] She does not remember when or where she obtained it, although it was new when she obtained it (*Id.*).

Ms. Smith did not identify any issues with her Philippe Richard YPC-1301 6-quart pressure cooker when she unboxed it (*Id.*, ¶ 9). Ms. Smith did not identify any issues with her Philippe Richard YPC-1301 6-quart pressure cooker during her use of the product prior to August 24, 2020 (*Id.*, ¶ 10).

Ms. Smith threw away the Use and Care Manual and box for her Philippe Richard YPC-1301 6-quart pressure cooker either the day or the day after she obtained the product (*Id.*, ¶ 11). Ms. Smith has not reviewed the Use and Care Manual for her Philipe Richard YPC-1301 6-quart pressure cooker since the day she obtained the pressure cooker and has not tried to find a copy of the Use and Care Manual online (*Id.*, ¶ 12).

On August 24, 2020, Ms. Smith decided to cook beans in her Philippe Richard YPC-1301 6-quart pressure cooker (*Id.*, ¶ 13). TTU states that Ms. Smith did not soak the dried beans she

---

[2] Based on the Court's review, there is a typographical error in TTU's statement of undisputed fact in paragraph 8 (Dkt. No. 25, ¶ 8). It appears to the Court that the word "manufactured" may have been intended but omitted from the first sentence of this paragraph.

3

intended to cook before pouring them into her Philippe Richard YPC-1301 6-quart pressure cooker (Dkt. No. 25, ¶ 14).  TTU states that instead, Ms. Smith rinsed a one-pound bag of white beans before adding them to her pressure cooker and then added a whole package of bacon, 2 ham hocks, and 2 cups of water in addition onion powder, garlic powder, parsley flakes, Cajun seasoning, and a bell pepper (*Id.*).  Ms. Smith denies this as stated and states with citation to record evidence that she used a one-pound bag of dried lima beans, a small package of bacon cut into small pieces, and two ham hocks to the pressure cooker (Dkt. No. 29-1, ¶ 14).  Ms. Smith states that she may have also added a chopped bell pepper or onion (*Id.*).  She states that she also added Cajun seasoning, garlic powder, onion powder, parsley, pepper flakes and two cups of either water or chicken broth (*Id.*).

Ms. Smith placed her Philippe Richard YPC-1301 6-quart pressure cooker on the left side burner coil on her hot plate and set the temperature to level 4 out of 10 (Dkt. Nos. 25, ¶ 15; 29-1, ¶ 15).  TTU states that Ms. Smith was not aware of any way to verify whether she had overfilled her Philippe Richard YPC-1301 6-quart pressure cooker beyond making sure it was not so full that it would overflow (Dkt. No. 25, ¶ 16).  Ms. Smith states that she admits that, at the time of her deposition, she did not recall being aware of any way to verify whether she had overfilled the subject pressure cooker, other than "just knowing." (Dkt. No. 29-1, ¶ 16).

Ms. Smith let the pressure cooker cook for about 45 minutes on temperature setting 4 of 10 before going to take a bath (Dkt. Nos. 25, ¶ 17; 29-1, ¶ 17).  She let the pressure cooker continue cooking for about 30 more minutes while she took a bath (*Id.*).  After Ms. Smith finished her bath, she moved the pressure cooker to the unheated right-side burner coil on her hot plate and allowed it to cool there for approximately 30 minutes (*Id.*, ¶ 18).

TTU states that Ms. Smith returned her Philippe Richard YPC-1301 6-quart pressure cooker to the left-side burner coil and attempted to remove the lid (Dkt. No. 25, ¶ 19).  TTU states that she believed all the pressure from her cook had been released because the "whistling" sound had stopped and the pressure cooker felt safe to the touch (*Id.*).  TTU states that she believed these were the best methods for determining whether the pressure cooker had de-pressurized and was ready to be opened; she was not aware of other methods to release or check pressure (*Id.*).  Ms. Smith states that she admits that, at the time of her deposition, she did not recall any other methods for determining whether the pressure cooker had de-pressurized (Dkt. No. 29-1, ¶ 19).

TTU states that Ms. Smith attempted to unlock and remove the lid using two hands but felt resistance to the attempt (Dkt. No. 25, ¶ 20).  TTU states that she tried a second time and met the same resistance (*Id.*).  TTU states that she tried a third time and heard a popping sound before the lid and some internal contents ejected (*Id.*).  TTU states that further, she had to use more pressure than she typically did to open the lid on her third attempt (*Id.*).  Ms. Smith denies this and states with citation to record evidence that she testified that the lid did not appear to want to "come unhooked." (Dkt. No. 29-1, ¶ 20).  Ms. Smith states that she further testified that she did not force the lid off and that she did not use any additional force than she typically did to open the pressure cooker (*Id.*).

Some of the contents from the pressure cooker came in contact with Ms. Smith's chest, upper abdomen, and legs (Dkt. Nos. 25, ¶ 21; 29-1, ¶ 21).  Some of the contents from the pressure cooker landed on the kitchen floor, wall, and counter (*Id.*, ¶ 22).  Steam continued to come out of the Philippe Richard YPC-1301 6-quart pressure cooker after the lid and some internal contents ejected from the device (*Id.*, ¶ 23).

TTU states that Ms. Smith observed that approximately half the bag of beans remained in her Philippe Richard YPC-1301 6-quart pressure cooker (Dkt. No. 25, ¶ 24). TTU states that further, meat and liquid remained in the pressure cooker (*Id.*). TTU states that Ms. Smith observed "that the pressure cooker" was still approximately 70 to 75% full of the contents she cooked after the ejection occurred (*Id.*).[3] Ms. Smith denies this and states with citation to record evidence that it is unclear from the record if Ms. Smith meant that the pot was 70-75% full or if 70-75% of the original contents remained in the pot (Dkt. No. 29-1, ¶ 24). Ms. Smith states that, when asked about what contents remained in the pressure cooker after the incident, she testified "[a]bout – I will say like half a bag – half a bag of it . . . about half a bag of the lima beans." (*Id.*). Ms. Smith states that, when asked what percentage of the pressure cooker was still filled with ingredients, she responded again in terms of how much of the contents were dispelled versus remained in the pot, responding, "[t]he beans itself, I would say, like half a bag. But with the meat and all of that, I would say probably maybe 70 – 75% . . . [s]o, add all of that. Because some of the – not a lot of the bacon came out, or the ox tails." (*Id.*). Ms. Smith states that it would seem that what she was trying to say was that half the beans and 75% of the meat remained in the pot, not that the pot was 75% full (*Id.*). Ms. Smith states that, admittedly, she was next asked, "[s]o, it was about 75% full, still?" to which she did respond, "[y]eah, about 75." (*Id.*).

TTU states that Ms. Smith does not believe that her Philippe Richard YPC-1301 6-quart pressure cooker had a design defect or insufficient instructions (Dkt. No. 25, ¶ 25). Ms. Smith admits to testifying that she did not believe that the cooker had a design defect or insufficient

---

[3] Based on the Court's review, there is a typographical error in TTU's statement of undisputed fact in paragraph 24 (Dkt. No. 25, ¶ 24). It appears to the Court that the words "that the pressure cooker" may have been intended but omitted from the third sentence of this paragraph.

instructions, but she notes that she is a layperson, not an attorney or an engineer (Dkt. No. 29-1, ¶ 25).

Ms. Smith acknowledged that the Use and Care Manual for the Philippe Richard YPC-1301 6-quart pressure cooker specifically states: "Do not open the pressure cooker [until] the unit has cooled and all internal pressure has been released. If the handles are difficult to push or pull, this indicate[s] that the cooker is still pressurized. Do not force open. Any pressure in the cooker can be hazardous." (Dkt. Nos. 25, ¶ 26; 29-1, ¶ 26). Ms. Smith further acknowledged reading this instruction the day she unboxed her Philippe Richard YPC-1301 6-quart pressure cooker (*Id.*).

TTU's retained engineering expert Jason Mattice performed a mechanical analysis of Ms. Smith's Philippe Richard YPC-1301 6-quart pressure cooker on November 7, 2023 (*Id.*, ¶ 27). To test Ms. Smith's Philippe Richard YPC-1301 6-quart pressure cooker, Mr. Matice filled the pressure cooker with water up to the ½ mark inside the pot. (*Id.*, ¶ 28). The initial temperature within the pressure cooker was 68.4 F and initial pressure was approximately 13.2 psia (*Id.*). Mr. Mattice then heated the pressure cooker up to 242.1 F, which produced internal pressure measuring 25.9 psia or 11.7 psi (*Id.*). The lid and handle functioned as expected and the lid did not eject (*Id.*). The heat was turned off and the pressure cooker was allowed to depressurize naturally (*Id.*). It took 16 minutes and 36 seconds from the beginning of depressurization for enough pressure to release and cause the safety lock to recess (*Id.*). The lid was removed without issue (*Id.*).

TTU states that testing demonstrated that there was no evidence of structural damage or design defects to Ms. Smith's Philippe Richard YPC-1301 6-quart pressure cooker, that the device conforms with UL 136 standards as confirmed by testing done to UL specifications, and that the device functions appropriately when operated as intended and pursuant to the instructions in the

Use and Care Manual (Dkt. No. 25, ¶ 29). TTU states that testing did not replicate the occurrences of the August 24, 2020 incident at issue (*Id.*).

Ms. Smith denies this (Dkt. No. 29-1, ¶ 29). Ms. Smith states with citation to record evidence that, as confirmed in discussions with TTU's counsel on March 1, 2024, TTU's expert did not conduct any testing under UL 136, and no testing was done by TTU to confirm or deny that the device conformed with UL 136 (*Id.*).

TTU states that based on the results of his examination and operational testing, as well as his review of Ms. Smith's deposition transcript, Mr. Mattice opines that the August 24, 2020, incident at issue occurred because Ms. Smith forced her pressure cooker open before the device had fully depressurized, despite the specific instructions in the pressure cooker's Use and Care Manual explaining how to depressurize the pressure cooker, how to tell if the pressure cooker has fully depressurized, and not to attempt to open the pressure cooker if there is resistance in the handles because it means the device is still pressurized (Dkt. No. 25, ¶ 30). Ms. Smith admits that this represents Mr. Mattice's opinions and conclusions, but Ms. Smith denies as to the substance of said conclusions (Dkt. No. 29-1, ¶ 30).

TTU further states that Mr. Mattice notes that neither a "whistling" sound nor ensuring the pressure cooker is safe to touch are appropriate methods for determining whether the Philippe Richard YPC-1301 6-quart pressure cooker is still pressurized (Dkt. No. 25, ¶ 31). TTU states that, instead, the device's safety lock is specifically designed to drop when the pressure cooker returns to a safe level of pressure (*Id.*). TTU states that Ms. Smith did not know that this was the appropriate method to determine whether her pressure cooker was safe to open after using it to cook food (*Id.*). Ms. Smith admits that this represents Mr. Mattice's opinions and conclusions, but Ms. Smith denies as to the substance of said conclusions (Dkt. No. 29-1, ¶ 31).

TTU states that Mr. Mattice further opines that Ms. Smith engaged in additional misuse that contributed to the August 24, 2020, incident at issue (Dkt. No. 25, ¶ 32).  TTU states that specifically, Ms. Smith overfilled the pressure cooker, which caused excess pressure to develop, as evidenced by her testimony that she threw the Use and Care Manual away, that the only mechanism to determine whether the pressure cooker is too full is that it overflows, and that the pressure cooker remained 70-75% full of its contents after the lid and some internal contents were ejected on her third attempt to open the pressurized device (*Id.*).  TTU states that these actions were also despite and in contravention of the specific instructions contained within the Use and Care Manual (*Id.*).  Ms. Smith admits that this represents Mr. Mattice's opinions and conclusions, but Ms. Smith denies as to the substance of said conclusions (Dkt. No. 29-1, ¶ 32).

Ms. Smith's retained engineering experts David Rondinone, Ph.D., P.E. and Derek King, M.S. examined Ms. Smith's Philippe Richard YPC-1301 6-quart pressure cooker but did not perform testing – including testing for misuse – on Ms. Smith's specific device (Dkt. Nos. 25, ¶ 33; 29-1, ¶ 33).  Instead, Dr. Rondinone and Mr. King performed testing on an exemplar from the Berkeley Engineering and Research, Inc. offices (*Id.*).

TTU states that Dr. Rondinone and Mr. King claim that Ms. Smith's Philippe Richard YPC-1301 6-quart pressure cooker has rotational misalignment in the handle that may interfere with the sliding pin that functions to lock the lid when pressurized because the raised float valve will keep it stationary and a loose lid handle (Dkt. No. 25, ¶ 34).  Ms. Smith denies this with citation to record evidence (Dkt. No. 29-1, ¶ 34).  Ms. Smith states that Dr. Rondinone and Mr. King concluded that:  (1) the defective manufacture of the subject pressure cooker likely resulted in a defective lid interlock which allowed Ms. Smith to open the cooker under pressure and that a design that allows for the interlock assembly to be out of alignment is also a defect; (2) the subject

pressure cooker allows food material to clog potentially the interlocking float valve for the Safety Lock as there is no baffle or screen protecting these valves; and (3) careful and prudent manufacturers and distributors of consumer products like pressure cookers should perform Failure Modes and Effects Analyses ("FMEA") or similar risk assessments to eliminate or reduce potential dangers associated with their products (*Id.*). Ms. Smith states that it appears unlikely that TTU performed a proper risk assessment for the subject pressure cooker, and there is no evidence of such an assessment (*Id.*). Ms. Smith states that, if TTU did not perform an FMEA or similar risk assessment, the lack thereof contributed to the failure experienced in this matter (*Id.*).

Dr. Rondinone and Mr. King did not specifically test Ms. Smith's Philippe Richard YPC-1301 6-quart pressure cooker (Dkt. Nos. 25, ¶ 35; 29-1, ¶ 35). Instead, they found an exemplar in their office with a similar rotationally misalignment to Ms. Smith's pressure cooker and tested that device (*Id.*). Their report states that they infused the exemplar with air pressure to lift the float valve with the lid in closed position and were able to rotate the lid open even though the float valve was raised (*Id.*). The test was conducted again with the same result after loosening the exemplar lid handle to a similar degree as Ms. Smith's pressure cooker (*Id.*). The report contains no further details regarding the measurements or conditions of the test (*Id.*).

TTU states that, despite not performing testing on Ms. Smith's Philippe Richard YPC-1301 6-quart pressure cooker, Dr. Rondinone and Mr. King speculatively opine that the rotational misalignment is a manufacturing/design defect and that it resulted in interlock failure in Ms. Smith's pressure cooker on August 24, 2020 (Dkt. No. 25, ¶ 36). Ms. Smith denies this with citation to record evidence (Dkt. No. 29-1, ¶ 36). Ms. Smith states that Dr. Rondinone and Mr. King's opinions and conclusions are not speculative but are based on thorough, methodical examination, inspection, and testing in accordance with sound scientific methodology and are

10

accurate to a degree of engineering certainty (*Id.*). Ms. Smith states that Dr. Rondinone and Mr. King concluded that: (1) the defective manufacture of the subject pressure cooker likely resulted in a defective lid interlock which allowed Ms. Smith to open the cooker under pressure and that a design that allows for the interlock assembly to be out of alignment is also a defect; (2) the subject pressure cooker allows food material to clog potentially the interlocking float valve for the Safety Lock as there is no baffle or screen protecting these valves; and (3) careful and prudent manufacturers and distributors of consumer products like pressure cookers should perform FMEAs or similar risk assessments to eliminate or reduce potential dangers associated with their products (*Id.*). Ms. Smith states that it appears unlikely that TTU performed a proper risk assessment for the subject pressure cooker, and there is no evidence of such an assessment (*Id.*). Ms. Smith states that, if TTU did not perform an FMEA or similar risk assessment, the lack thereof contributed to the failure experienced in this matter (*Id.*).

Dr. Rondinone and Mr. King further opine that the Philippe Richard YPC-1301 6-quart pressure cooker should also have a screen or baffle mechanism to prevent food debris clogging the valve; however, they did not indicate, suggest, state, or opine that a food debris clog occurred with Ms. Smith's pressure cooker on August 24, 2020 (Dkt. Nos. 25, ¶ 37; 29-1, ¶ 37).

TTU states that Dr. Rondinone and Mr. King further opine that TTU should have performed an FMEA risk assessment to eliminate unnecessary risks from the design (Dkt. No. 25, ¶ 38). TTU states that Dr. Rondinone and Mr. King acknowledge they do not know whether design risk assessment was conducted on the Philippe Richard YPC-1301 6-quart pressure cooker and fail to identify how a design risk assessment would have prevented the incident at issue in this lawsuit (*Id.*). Ms. Smith denies this with citation to record evidence (Dkt. No. 29-1, ¶ 38). Ms. Smith states that Dr. Rondinone and Mr. King stated that it "appear[ed] unlikely that Tabletops

11

Unlimited performed a proper risk assessment." (*Id.*). Ms. Smith states that no documentation of a risk assessment was received from TTU during discovery (*Id.*). Ms. Smith states that Dr. Rondinone and Mr. King additionally explained that, if an FMEA or other risk assessment had been conducted, TTU could have eliminated unnecessary risks as part of their design process – such as a defect and weak interlock and a lack of screens or baffles (*Id.*).

Dr. Rondinone and Mr. King offer no opinions regarding the adequacy of the warnings or instructions that came with the Philippe Richard YPC-1301 6-quart pressure cooker (Dkt. Nos. 25, ¶ 39; 29-1, ¶ 39).

TTU states that Dr. Rondinone and Mr. King offer no opinions addressing Ms. Smith's misuse of the Philippe Richard YPC-1301 6-quart pressure cooker (Dkt. No. 25, ¶ 40). Ms. Smith denies this with citation to record evidence (Dkt. No. 29, ¶ 40). Ms. Smith states that the argument that she misused the Subject Pressure Cooker speaks to the defect itself (*Id.*). Ms. Smith states that, absent the defect, Ms. Smith could not have opened the pressure cooker prematurely while it was under pressure absent the application of at least 100 pounds of force (*Id.*). Ms. Smith states that Dr. Rondinone and Mr. King's test on the exemplar pressure cooker recreated this particular "misuse" by attempting to open a pressure cooker with the same defect as the subject pressure cooker while it was still pressurized (*Id.*). Ms. Smith states that they were successfully able to do so (*Id.*). Ms. Smith states that, furthermore, Dr. Rondinone and Mr. King's observations and opinions regarding the lack of protective screens or baffles to cover all of the valves speaks to TTU's allegations that the incident was caused by Ms. Smith overfilling the pressure cooker, as the presence of screens or baffles would have mitigated the risk of overfilling causing the valves to clog (*Id.*).

TTU states that Mr. Mattice prepared a Supplemental Mechanical Analysis Report rebutting the opinions rendered by Dr. Rondinone and Mr. King (Dkt. No. 25, ¶ 41).  TTU states that Mr. Mattice reiterated that his examination and testing, done in accordance with UL standards, did not reproduce the outcome or scenario alleged by Ms. Smith (*Id.*).  TTU states that he further clarified that Dr. Rondinone and Mr. King had not performed misuse testing of any kind or provided sufficient details of their exemplar testing method to scientifically support their claims – or even tested Ms. Smith's specific Philippe Richard YPC-1301 6-quart pressure cooker (*Id.*).  Ms. Smith denies this with citation to record evidence (Dkt. No. 29-1, ¶ 41).  Ms. Smith states that Mr. Mattice's examination and testing were not conducted in accordance with the relevant standard, UL 136, § 9 (*Id.*).  Ms. Smith states that the argument that she misused the subject pressure cooker speaks to the defect itself (*Id.*).  Ms. Smith states that, absent the defect, she could not have opened the pressure cooker prematurely while it was under pressure absent the application of at least 100 pounds of force (*Id.*).  Ms. Smith states that Dr. Rondinone and Mr. King's test on the exemplar pressure cooker recreated this particular "misuse" by attempting to open a pressure cooker with the same defect as the subject pressure cooker while it was still pressurized (*Id.*).  Ms. Smith states that they were successfully able to do so (*Id.*).  Ms. Smith states that, furthermore, Dr. Rondinone and Mr. King's observations and opinions regarding the lack of protective screens or baffles to cover all of the valves speaks to TTU's allegations that the incident was caused by Ms. Smith overfilling the pressure cooker, as the presence of screens or baffles would have mitigated the risk of overfilling causing the valves to clog (*Id.*).

TTU states that Mr. Mattice further explained that his examination and operational testing demonstrated that the sliding pin/locking pin on Ms. Smith's Philippe Richard YPC-1301 6-quart pressure cooker is 7.5 mm long, that the cooking pot channel it slides into is 7.1 mm deep, and that

operational testing did not replicate the speculative claim that the device fails to maintain lock pin interference and can be easily opened when pressurized, as claimed by Dr. Rondinone and Mr. King (Dkt. No. 25, ¶ 42). Ms. Smith denies this as stated with citation to record evidence (Dkt No. 29-1, ¶ 42). Ms. Smith states that Dr. Rondinone and Mr. King's opinions and conclusions are not speculative but are based on thorough, methodical examination, inspection, and testing in accordance with sound scientific methodology (*Id.*).

Ms. Smith did not designate rebuttal expert witnesses or serve a rebuttal report from Dr. Rondinone and Mr. King (Dkt. Nos. 25, ¶ 43; 29-1, ¶ 43).

## II.   Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *UnitedHealth Group Inc. v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Federal Rule of Civil Procedure 56 and noting that summary judgment is proper if there is no genuine issue of material fact for trial).

Under such circumstances, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322. "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923 (8th Cir. 2004) (internal citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Regional Medical Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

Parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

### III. Analysis

Ms. Smith brings claims in strict products liability, negligence, negligent manufacturing defect, negligent design defect, negligent information defect, and breach of implied warranties (Dkt. Nos. 1; 29, at 2).  TTU asserts that it is entitled to summary judgment in its favor because, based on undisputed record evidence, Ms. Smith cannot prove her pressure cooker contained a defect (Dkt. No. 26, at 10-12).  Based on the record evidence before the Court, construing all reasonable inferences from that record evidence in favor of Ms. Smith, genuine issues of material fact remain in dispute on whether Ms. Smith's pressure cooker contained a defect.  The Court denies TTU's motion for summary judgment on this basis.

TTU asserts that it is entitled to summary judgment in its favor because, based on undisputed record evidence, Ms. Smith cannot negate other causes for the incident at issue,

15

including her own alleged misuse of the pressure cooker (Dkt No. 26, at 12-14). Based on the record evidence before the Court, construing all reasonable inferences from that record evidence in favor of Ms. Smith, genuine issues of material fact remain in dispute on whether Ms. Smith allegedly misused the pressure cooker and whether, if necessary, Ms. Smith can negate other causes for the incident at issue, including her own alleged misuse of the pressure cooker. Ms. Smith, through citation to record evidence, denies misuse. The Court denies TTU's motion for summary judgment on this basis.

To the extent Ms. Smith seeks costs for having to defend against TTU's motion for summary judgment (Dkt. No. 29, at 2), the Court denies her request.

### IV.     Conclusion

The Court denies TTU's motion for summary judgment. This case remains set for trial.

It is so ordered this 15th day of April, 2024.

*Kristine G. Baker*

Kristine G. Baker
Chief United States District Judge